**LAVALL et al. v. UNITED STATES et al.**

United States District Court
S. D. New York.
May 16, 1950.

William L. Standard, New York City, for libelants.

Irving H. Saypol, U. S. Atty., New York City, Martin J. Norris, Sp. Asst. to U. S. Atty., New York City, of counsel, for respondents.

NOONAN, District Judge.

The libelants, members of the crew of the S.S. Jesse Billingsley have instituted this action to recover an award for alleged salvage services which they claim were rendered by them to their own vessel on November 19, 1945.

From all of the evidence adduced at the trial, I am not at all persuaded that the libelants have established by a fair preponderance of the credible evidence, that the abandonment of the S.S. Jesse Billingsley was absolute and without hope or expectation of returning to the vessel, nor that the members of the crew were clearly discharged from their duties to her and from their shipping contract.

The libel is, therefore, dismissed. Submit Findings of Fact and Conclusions of Law accordingly.

### Findings of Fact

1. At all material times the S.S. Jesse Billingsley was owned by respondent, United States of America, and with respect to which respondent, William J. Rountree Co., Inc., acted as a general agent, as a ship's husband and for the performance of certain other shoreside functions.

2. The S.S. Jesse Billingsley, a Liberty ship, left New York for a voyage to Trieste and return on October 29, 1945.

3. The S.S. Jesse Billingsley carried cargo consisting of bagged flour, which cargo was owned by United States of America.

4. On November 18, 1945, the S.S. Jesse Billingsley put in at Ancona, Italy, for a few hours where her master received routing instructions from the British authorities in charge of that port, for the voyage from Ancona to Trieste.

5. On November 19, 1945, at 11:40 A. M., in an area approximately five miles off Savola Point, the S.S. Jesse Billingsley came in contact with a submerged object which caused a violent explosion at the bow.

6. The vessel went down at the bow and took a list to starboard.

7. The master, in the exercise of his discretion and for the safety of the crew, sounded the general alarm and sent out a call for aid. Approximately ten minutes after the explosion occurred, the master ordered the crew to take to the #1 and #3 starboard lifeboats.

8. The said lifeboats were lowered away and the master issued instructions for the lifeboats to stay together and to stay in the vicinity of the S.S. Jesse Billingsley.

9. The two lifeboats rowed a safe distance away from the S.S. Jesse Billingsley, in the meantime keeping the vessel under constant observation and staying in her vicinity. For periods of ten or fifteen minutes at a time they would drift with the S.S. Jesse Billingsley.

10. Weather conditions were favorable. Visibility was good; the temperature was mild; slight winds prevailed; and the state of the sea was that of moderate swells.

11. At one point in answer to a remark of a member of the crew, the captain stated that they would be back on the ship for lunch.

12. At approximately 1:30 P.M. on November 19, 1945, the British destroyer Jervis came into sight. A power boat was launched from the Jervis and fifteen of her crew, including a medical officer, approached the two lifeboats. Medical assistance was given to an injured crewman of the S.S. Jesse Billingsley.

13. At 1:50 P.M. on November 19, 1945, the master, officers and crew of the S.S. Jesse Billingsley reboarded their ship together with ten members of the crew of the H.M.S. Jervis.

14. At that time the water had risen to a foot or two below the hawse pipe of the S.S. Jesse Billingsley's bow.

15. The crew, at the orders of the master, chopped up dunnage and hatch boards for fire wood. Steam was raised and at 4:10 P.M. the S.S. Jesse Billingsley, at a speed of approximately three knots, proceeded to the position of H.M.S. Jervis.

16. The S.S. Jesse Billingsley was in, or had drifted into, a mine field.

17. With the aid and occasional assistance of tugs Aspirant, Empire Fred, Empire Edward, Chiron, Valkyrien, and B.Y. M.S. 2209, the S.S. Jesse Billingsley proceeded under her own power to Trieste.

18. At Muggia Bay, she was placed on mud flats and moored at that place.

19. Her cargo, consisting of 303,439 bags of flour, was discharged by Italian stevedores.

20. When cargo was almost completely discharged the S.S. Jesse Billingsley was shifted with the aid of tugs to a pier at Trieste.

21. While at Muggia Bay and at Trieste, the crew was quartered aboard the vessel receiving their subsistence and lodging thereon. Regular port watches were established.

22. On December 29, 1945, nineteen members of the crew were repatriated to the United States. In February 1946, the remainder of the crew were repatriated to the United States.

23. Lack of repair facilities and material at Trieste; the end of hostilities creating a surplus of Liberty-type vessels; a shortage in food supply at Trieste during this period and the contemplated prolonged lay-up of the S.S. Jesse Billingsley at Trieste before the damage sustained by

534

reason of the disaster would be repaired and she could resume service, were considerations in the repatriation of the crew.

24. The value of the hull after the explosion was $148,000. The value of the cargo after the explosion was $386,053.76. Total value of hull and cargo was $534,053.76.

Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties to this action.

2. Libelants have failed to establish by a fair preponderance of the credible evidence that the abandonment of the S.S. Jesse Billingsley was absolute and without hope or expectation of returning to the vessel.

3. Libelants have failed to establish by a fair preponderance of the credible evidence that the members of the crew of the S.S. Jesse Billingsley were clearly discharged from their duties to her and from their shipping contract.

4. The libel is dismissed against respondent, United States of America.

5. Libelants at the outset of the trial having consented to discontinue this suit, with prejudice, as against the general agent, William J. Rountree Co., Inc., the libel is dismissed as to respondent, William J. Rountree Co., Inc.